FILED

06/30/2026

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 25-0437

DA 25-0437

IN THE SUPREME COURT OF THE STATE OF MONTANA

2026 MT 136

IN THE MATTER OF THE ESTATE OF
ANN LAFFERTY PFEIFER-MURPHY,

Deceased.

APPEAL FROM:    District Court of the Twelfth Judicial District,
In and For the County of Chouteau, Cause No. DV-20-022
Honorable Kaydee Snipes Ruiz, Presiding Judge

COUNSEL OF RECORD:

For Appellants:

Paul A. Sandry, Johnson, Berg, & Saxby, PLLP, Kalispell, Montana

For Appellee:

Michelle K. Ostrye, Silverman Law Office, PLLC, Bozeman,
Montana

Submitted on Briefs: March 11, 2026

Decided:  June 30, 2026

Filed:

_____
Clerk

Justice James Jeremiah Shea delivered the Opinion of the Court.

¶1     The Cook-Reynolds Partnership and Linda Reynolds (collectively, the Partnership or CRP) appeal the Twelfth Judicial District Court's denial of their M. R. Civ. P. 60(b) motion seeking relief from an Idaho judgment registered in Montana.[1]  We restate and address the following issue:

> *Whether the District Court erred by denying the Partnership's motion for Rule 60(b)(4) relief from a foreign judgment.*

¶2     We reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

¶3     Linda Reynolds (Linda) and Gerald Cook (Gerald) each inherited a one-half interest in certain Chouteau County farmland (Chouteau Property) after their mother died in 1986. In 1992, Linda and Gerald formed the Cook-Reynolds Partnership for the purpose of "conducting the business of leasing and operating farm land and Conservation Reserve Program land in Chouteau County, Montana."  Linda and Gerald retained ownership of the Chouteau Property as equal cotenants while allowing the Partnership to lease the land to third parties.  CRP's Partnership Agreement specifies that partnership management "shall be by Linda Reynolds as the managing partner" and assigns Linda decision-making authority regarding the care and leasing arrangements of the land, growing crops, land

---

[1] The Estate suggests that Linda Reynolds improperly joined the District Court litigation and asks us to dismiss her individual appeal because the Idaho judgment granted no relief against her personally.  Because the Estate does not provide any legal support or develop this argument, we decline to distinguish between the Appellants' arguments. *See Est. of Harris v. Reilly*, 2025 MT 126, ¶ 16, 422 Mont. 383, 570 P.3d 552 (noting Court's lack of obligation to develop arguments on a party's behalf).

management, and conservation program participation. In June 2008, Linda and Gerald conveyed their respective interests in the Chouteau Property to the Cook-Reynolds Partnership, which continues to operate long-term agricultural leases. The Partnership Agreement does not grant Gerald authority to encumber or convey any interest in CRP's property. The Partnership's principal place of business has been continuously located in Montana, although Gerald lives in Idaho.

¶4 In 2007, Gerald's wife, Karin Cook (Karin), was appointed personal representative of the Estate of Ann Lafferty Pfeifer-Murphy (the Estate) in probate proceedings before the Idaho First Judicial District Court (Idaho Court). Between 2007 and 2019, Karin breached her trustee and fiduciary obligations to the Estate by misappropriating hundreds of thousands of dollars from the Estate to benefit herself, Gerald, and Pneumex, Inc., a company they owned. Karin misappropriated these funds, in part, by making loans from the Estate to Pneumex, Inc., and issuing stock in Pneumex, Inc., to the Estate to cover the principal and interest.

¶5 In 2008 and 2014, Karin and Gerald executed two promissory notes in which Gerald purported to pledge the proceeds from selling unspecified land in Chouteau County in order to repay funds borrowed from the Estate. Gerald signed both promissory notes as "Gerry Cook," and neither note references the Cook-Reynolds Partnership. Executed on Pneumex letterhead, the 2008 note promised that "Gerry Cooks [sic] land in Chouteau County and the Cooks residence in Sandpoint Id [sic] will be liquidated" to repay Estate money invested in Pneumex, Inc. The 2014 promissory note stated that principal and interest on a loan from the Estate "shall be payable from the proceeds of the sale of real property

3

consisting of two 320 acre parcels located in Chouteau County, Montana," which was "to be completed within 60 days of the date of this note."

¶6     On March 6, 2020, the Estate's remaining beneficiaries (Beneficiaries) petitioned the Idaho Court supervising the probate proceedings to restrain Karin from exercising her personal representative powers until she posted a bond to secure the Estate. The Beneficiaries also asked the Idaho Court to restrain Karin, Gerald, Pneumex, Inc., and the Partnership from disposing of or further encumbering their assets to protect the Estate's ability to recover any misappropriated funds. The Beneficiaries served their petition and supporting memorandum (collectively, the Petition) on "Gerald Cook personally and as Partner: Cook-Reynolds Partnership" to Gerald's Pneumex e-mail address and by mail to Gerald's residential address in Idaho. The Petition alleged that "Gerald Cook pledged property owned by the Cook-Reynolds Partnership to which he holds a partial interest," but did not identify wrongdoing by the Partnership itself or indicate that the Partnership was named an interested person in the Estate.

¶7     On March 7, 2020, a paralegal for Beneficiaries' counsel emailed Linda "as a courtesy" to inform her of the court filings, "which may impact the Cook-Reynolds Partnership and the property it owns in Montana." Counsel apparently attached copies of the Beneficiaries' Petition, a proposed restraining order, and a hearing notice.[2] The email

---

[2] The proposed restraining order and hearing notice do not appear in the record before the District Court. The Estate and the Partnership do not appear to dispute whether these documents were actually attached to the March 7 email. The Beneficiaries' Petition was not officially filed with the Idaho Court until March 9, 2020, so it is unlikely that the hearing notice attached to the March 7 email was issued by the Idaho Court.

continued, "It would seem real estate owned by the Partnership was pledged by Gerald Cook as collateral for loans Gerald Cook, Karin Cook and Pneumex Inc., took from the estate of Mrs. Ann Lafferty Pfeiffer-Murphy [sic]." On March 12, 2020, Linda responded, "Yes, I have received your email. Thank you, . . . ."

¶8 On March 19, 2020, the Idaho Court held an emergency hearing on Beneficiaries' Petition. According to the hearing minutes, Gerald appeared as the "husband of Karin Cook, PR" and argued that Karin and he received insufficient notice of the hearing to obtain counsel.[3] The minutes do not reference the Partnership at all. The Idaho Court restrained Karin, Gerald, Pneumex, Inc., and the Partnership from disposing of or encumbering their assets until Karin posted a bond. The restraining order was served on Gerald personally and as partner of CRP through his Pneumex e-mail address and by mail at his Idaho address; Linda was not served.

¶9 On March 20, 2020, the Beneficiaries' counsel emailed Linda to inform her of the Idaho Court's orders "requiring Karin Cook to post a bond and restraining the personal representative and others." The email explained, "Included in the order is a restrainment [sic] on property of the Cook-Reynolds Partnership. You will note while reading the order that it is in effect only until such time as Mrs. Cook posts a bond to secure the estate." Counsel apparently attached copies of the Idaho Court's hearing minutes, restraining order, and order to post bond.

---

[3] The parties did not provide a transcript of the Idaho Court's hearing, but the hearing minutes are part of the District Court's record.

5

¶10   In August 2020, Karin and Gerald entered into a Confidential Settlement Agreement with the Estate and its Beneficiaries, confessing to a $1,072,944.78 judgment. Gerald purported to execute the confession on CRP's behalf, thereby including the Partnership as a judgment debtor jointly and severally responsible for the total judgment. Pursuant to the Confidential Settlement Agreement, Karin and Gerald executed a Stipulation for Entry of Order of Judgment (Stipulation) with the other judgment debtors, the Estate, and the Beneficiaries. In the Stipulation, the parties jointly stated that the Idaho Court had jurisdiction in the matter and waived any right to appear or to plead further in favor of the Idaho Court entering judgment without a hearing. Gerald signed the Confidential Settlement Agreement and the Stipulation in his individual capacity, as president of Pneumex, Inc., and another Idaho corporation, and as "General Partner, Cook-Reynolds Partnership."

¶11   On September 4, 2020, the Idaho Court entered a judgment pursuant to the Stipulation in the total amount of $1,072,944.78 in favor of the Estate against the Partnership and others (Idaho Judgment). The appended Certificate of Service indicates that a copy of the judgment was mailed to the Partnership at Linda's Montana residential address. On September 11, 2020, the Beneficiaries domesticated the Idaho Judgment by filing a copy in the Montana Twelfth Judicial District Court (District Court).

¶12   On December 18, 2024, the Estate and its Beneficiaries applied to the District Court for a writ of execution of the domesticated Idaho Judgment against the Partnership. By December 31, 2024, Linda engaged counsel on the Partnership's behalf to challenge the Idaho Judgment. On January 2, 2025, the Partnership moved to quash the writ of execution

6

and asked the District Court to declare the Idaho Judgment void for lack of personal jurisdiction. On February 4, 2025, the Partnership moved to vacate the Idaho Judgment as void for lack of jurisdiction pursuant to M. R. Civ. P. 60(b)(4) and on other Rule 60 grounds.

¶13 On May 6, 2025, the District Court held a hearing on the Rule 60 motion. Linda testified that the Partnership had never conducted any business in Idaho, with Karin, or with the Estate. Linda testified that the Partnership never benefited from and had no knowledge of Karin's misappropriation of Estate assets. Linda attested that the Partnership did not pledge its Chouteau Property to the Estate and that she had only authorized two mortgages against the Chouteau Property, which Linda and Gerald both executed as partners in September 2014. Linda testified that she was not served a complaint or summons related to the Idaho probate proceedings, and that she remained unaware of the Idaho Judgment until the Estate attempted to execute it against the Partnership in December 2024. Linda admitted that the Idaho Judgment was mailed to her correct address, but she explained that she "would not have paid attention to any mailing if it came" in 2020 because she was taking care of her daughter, who was undergoing and recovering from cancer treatment in Oregon. Linda testified that Gerald and she never discussed confessing to a judgment against the Partnership and that she had not seen the Confidential Settlement Agreement until after December 2024. The Estate called no witnesses and produced no affidavits.

¶14 The District Court did not rule on the Partnership's Rule 60 motion to vacate within its extended 120-day time frame, and the motion was deemed denied by the operation of M. R. Civ. P. 60(c)(1) and 59(f) on June 4, 2025.

## STANDARDS OF REVIEW

¶15 The nature of the final judgment, order, or proceeding from which relief is sought and the specific basis of a Rule 60(b) motion determines the applicable standard of review. *Essex Ins. Co. v. Moose's Saloon, Inc.*, 2007 MT 202, ¶ 16, 338 Mont. 423, 166 P.3d 451. We review de novo a district court's ruling on a Rule 60(b)(4) motion, because whether a judgment is void is a conclusion of law. *Essex*, ¶ 16. A district court's deemed denial of a motion to set aside judgment is reviewed for error on its merits. *See Flathead Lakers Inc. v. Mont. Dep't of Nat. Res. & Conservation*, 2023 MT 85, ¶ 68, 412 Mont. 225, 530 P.3d 769.

## DISCUSSION

¶16 *Whether the District Court erred by denying the Partnership's motion for Rule 60(b)(4) relief from a foreign judgment.*

¶17 The Partnership argues that the District Court incorrectly denied Rule 60(b)(4) relief because the Idaho Court's judgment against the Partnership is void for lack of personal jurisdiction.[4] The Estate responds that res judicata precludes collateral attack on the Idaho Judgment and that the Partnership voluntarily submitted to the Idaho Court's personal jurisdiction through Gerald's actions.

---

[4] Because we hold that Rule 60(b)(4) relief is warranted, we do not reach the Partnership's alternative arguments pursuant to Rule 60(b)(6) or Rule 60(d).

8

¶18 Although we owe full faith and credit to other states' final judgments, they may be challenged for invalidity. *Carr v. Bett*, 1998 MT 266, ¶ 42, 291 Mont. 326, 970 P.2d 1017. The Uniform Enforcement of Foreign Judgments Act allows a party to raise the rendering court's lack of personal jurisdiction as grounds to vacate a foreign judgment filed in Montana. *Carr*, ¶ 42 (citing § 25-9-503, MCA). A Rule 60(b) motion is the appropriate vehicle for seeking relief from a foreign judgment. *Carr*, ¶ 32. Rule 60(b)(4) allows a court to grant relief from a final judgment or order because the judgment is "void" for lack of jurisdiction. *Greater Missoula Area Fed'n of Early Childhood Educators v. Child Start, Inc.*, 2009 MT 362, ¶ 21, 353 Mont. 201, 211 P.3d 881. A motion for Rule 60(b)(4) relief must be made "within a reasonable time" after the entry of judgment. M. R. Civ. P. 60(c)(1); *Koch v. Billings Sch. Dist. No. 2*, 253 Mont. 261, 269, 833 P.2d 181, 186 (1992).

¶19 An Idaho court could only exercise personal jurisdiction over the Partnership—an out-of-state general partnership—through Idaho's long-arm statute or if the Partnership voluntarily appeared or waived any personal jurisdiction objection. *See Telford v. Smith County*, 314 P.3d 179, 182-83 (Idaho 2013). The Partnership argues that because it never conducted business in Idaho, had no connections with the Estate, and obtained no monies from the Estate, the Idaho long-arm statute is not satisfied. Idaho Code § 5-514 (2020). The Partnership concedes that Gerald *purported* to sign the Confidential Settlement Agreement on its behalf, but contends that Gerald had no authority to appear in the Idaho probate proceedings or consent to personal jurisdiction on the Partnership's behalf. The Estate responds that res judicata prevents the Partnership from relitigating the jurisdiction question, as Gerald consented to Idaho jurisdiction over the Partnership. The Estate asserts

9

that Gerald's actions as a general partner bound the Partnership because the Estate and Beneficiaries lacked knowledge of his limited authority or, alternatively, because Linda ratified his unauthorized conduct. The dispositive issue, therefore, is whether Gerald was authorized to act on the Partnership's behalf in the Idaho probate proceedings.

¶20 Although res judicata applies to questions of jurisdiction, the questions must be "fully and fairly litigated" in the rendering court to be accorded full faith and credit. *Underwriters Nat'l Assurance Co. v. N.C. Life & Accident & Health Ins. Guar. Ass'n*, 455 U.S. 691, 706, 102 S. Ct. 1357, 1367 (1982); *Genuine Parts Co. v. Rascal's Auto Parts, Inc.*, 2008 MT 313, ¶ 6, 346 Mont. 56, 192 P.3d 1153. In *Genuine Parts*, we determined that a personal jurisdiction issue was fully and fairly litigated because appellants had made the same argument before the rendering Georgia court. *Genuine Parts*, ¶ 8; *see also In re Child Support of Mason*, 1998 MT 192, ¶¶ 17-19, 290 Mont. 253, 964 P.2d 743 (barring relitigation when rendering Utah court received extensive briefing regarding personal jurisdiction and parties presented identical arguments in Montana court).

¶21 Unlike the rendering courts in *Genuine Parts* and *Mason*, the Idaho Court did not receive briefing about its jurisdiction over the Partnership and made no express finding. The Idaho Court did not hear argument about whether Gerald could bind the Partnership in dealings with third parties or voluntarily subject the out-of-state Partnership to Idaho jurisdiction. The Idaho Court simply entered judgment against the Partnership pursuant to the Stipulation, which Gerald purported to execute as general partner of the Cook-Reynolds Partnership. But if Gerald could not act for CRP in the proceedings, then CRP had no opportunity to argue that the Idaho Court lacked personal jurisdiction. Whether the Idaho

10

Court had personal jurisdiction over the Partnership was not fully and fairly litigated in the Idaho probate proceedings, leaving Montana courts free to consider whether Gerald had authority to consent to personal jurisdiction on the Partnership's behalf.

¶22 Under the Partnership Agreement, Gerald had no actual authority to act on behalf of the Partnership in the Idaho probate proceedings. *See* § 35-10-106(1), MCA ("[A] partnership agreement governs relations among the partners and between the partners and the partnership."). The Partnership Agreement designated Linda as the managing partner and reserved final management decision-making authority to her. The Estate asserts that Gerald's actions as a general partner could still bind the Partnership because he was apparently acting within the ordinary course of the Partnership's business, and even if Gerald lacked authority, Linda ratified his conduct on the Partnership's behalf.

¶23 Each partner is an "agent of the partnership for the purpose of its business." Section 35-10-301(1), MCA. A partner can bind the partnership to third parties subject to the conditions in § 35-10-301(1) or (2), MCA, and other principles of agency law. *See* § 35-10-105(1), MCA ("Unless displaced by a particular provision of this chapter, the principles of law and equity supplement this chapter."); 68 C.J.S. *Partnership* § 171, Westlaw (database updated Apr. 2026) ("[e]stablished principles of agency law will apply under the Uniform Partnership Acts" unless displaced by a particular provision). If the partner is "apparently carrying on in the ordinary course of the partnership business," the partner's act will bind the partnership unless the third party knows or has received notification that the partner lacks authority to act for the partnership. Section 35-10-301(1), MCA. If not apparently acting within the ordinary course of the partnership business, a

11

partner binds the partnership "only if the act was authorized by the other partners." Section 35-10-301(2), MCA. In agency terms, § 35-10-301(1), MCA, governs a partner acting with apparent authority, while § 35-10-301(2), MCA, recognizes that a partner without apparent authority may have actual authority to bind the partnership. *See* 68 C.J.S. *Partnership* § 178.

¶24 To justify its application of § 35-10-301(1), MCA, the Estate argues that Gerald was acting within the ordinary course of the Partnership's business when he engaged in the Idaho probate proceedings. The Estate first asserts that the "record is devoid of facts" to overcome a presumption that Gerald was acting within the ordinary course of the Partnership's business. The Estate points to § 26-1-602(20), MCA, and *Rock Island Plow Co. v. Cut Bank Implement Co.*, 101 Mont. 117, 53 P.2d 116 (1935), which recognize the rebuttable presumption that the "ordinary course of business has been followed." But this presumption simply establishes an evidentiary framework for proving that a business entity adhered to its usual practices absent controverting evidence. *See, e.g.*, *New Hope Lutheran Ministry v. Faith Lutheran Church of Great Falls, Inc.*, 2014 MT 69, ¶ 48, 374 Mont. 229, 328 P.3d 586 (holding that defendant did not meet shifted evidentiary burden on summary judgment to prove plaintiff congregation had not followed the ordinary course of business when adopting new constitution), *overruled in part on other grounds by Warrington v. Great Falls Clinic, LLP*, 2020 MT 174, 400 Mont. 360, 467 P.3d 567. The presumption has no bearing on the threshold question of *what* the Partnership's ordinary course of business is and whether, in this case, Gerald was acting within the ordinary course of the Partnership's business.

¶25 The Estate next argues that it is within the ordinary course of the Partnership's business to borrow money secured by its Chouteau Property. The Partnership's agricultural purpose and usual business conduct demonstrate a much narrower scope of business. *See, e.g.*, *Baltrusch v. Baltrusch*, 2003 MT 357, ¶¶ 40-45, 319 Mont. 23, 83 P.3d 256 (holding that partner's unilateral decision to transfer uneconomical farm leases was within agricultural partnership's ordinary course of business because partner had managed the leases alone for 30 years and transferees would continue farming the land as before); *Rodgers v. Saunders*, 144 Mont. 424, 428-29, 396 P.2d 817, 819 (1964) (reasoning that partner's contracts with dance students were within ordinary course of dance studio's business, but charges on studio's account for personal gasoline were outside scope of partnership business). The Partnership Agreement demonstrates that CRP's purpose is to manage its farmland and conservation land in Chouteau County. Linda testified that agricultural leases were the Partnership's sole source of income, that the Partnership never conducted any business in Idaho or with Karin, and that the Partnership did not benefit from Karin's misappropriation of Estate assets. Linda testified that the Partnership took no loans besides the mortgages executed by both Linda and Gerald as partners. The Estate presented no contradictory testimony, and Linda denied the Estate's assertions on cross-examination that the Partnership had ever pledged its property as collateral for monies Gerald borrowed from the Estate.

¶26 The Estate asserts that the 2008 and 2014 promissory notes executed by Gerald demonstrate that he borrowed money from the Estate on the Partnership's behalf, and that the Partnership would ordinarily defend itself against contract and tort liability arising from

13

those loans.[5] This argument is unavailing. First, Gerald did not purport to execute the 2008 and 2014 promissory notes on the Partnership's behalf. Neither note mentions the Cook-Reynolds Partnership or Gerald's role as general partner, and the 2008 note was on Pneumex letterhead. The notes' references to "Gerry Cooks [sic] land in Chouteau County" and to "two 320 acre parcels located in Chouteau County, Montana" do not suggest that Gerald purported to bind the Partnership rather than himself personally. The 2008 and 2014 promissory notes are not the Partnership's obligations. *See Schrammeck v. Fed. Sav. & Loan Ins. Corp.*, 258 Mont. 391, 398, 853 P.2d 702, 706 (1993) (considering whether loan documents purported to bind the partnership before determining partner's authority to bind partnership pursuant to § 35-10-301(1), MCA); *Est. of Pruyn v. Axmen Propane, Inc.*, 2009 MT 448, ¶¶ 43, 49, 354 Mont. 208, 223 P.3d 845 (holding that agents lacked apparent authority to bind principal business when promissory note did not reference business or indicate that individuals were signing in representative capacity), *overruled in part on other grounds by Associated Mgmt. Servs., Inc. v. Ruff*, 2018 MT 182, 392 Mont. 139, 424 P.3d 571.

¶27 Second, the record does not show that Gerald participated in the Idaho probate proceedings to protect the Partnership from liability, especially when considering that the

---

[5] The Estate's tort theory is premised on § 35-10-305(1), MCA (partnership liable for loss or injury to a person as a result of a wrongful act of a partner "acting in the ordinary course of business of the partnership or with the authority of the partnership") and § 35-10-305(2), MCA (partnership liable for loss caused by partner's misapplication of money in partnership's custody if money received in course of partnership business). But as both liability theories rely on action being taken in the ordinary course of partnership business, the analysis again comes down to whether Gerald was acting within the scope of CRP's business or CRP authorized his actions.

14

Beneficiaries did not allege that the Partnership itself had wronged the Estate in any way. The Beneficiaries' March 2020 Petition and supporting memorandum alleges, "Gerald Cook pledged property owned by the Cook-Reynolds Partnership to which he holds a partial interest." Counsel's March 7, 2020 email to Linda states that Gerald pledged "real estate owned by the Partnership," not that he did so on the Partnership's behalf. By all accounts in the record, Gerald participated in the Idaho Court's hearing on the Petition as Karin's husband, defended Karin's actions as benefitting the Estate, and did not mention the Partnership. The Idaho Court restrained "the Cook-Reynolds Partnership, by Gerald Cook, partner," from disposing of or encumbering its property until Karin posted bond, and the restraining order was served on Gerald personally and as CRP's partner. But these references indicate concern that the Partnership's assets would disappear before Beneficiaries could recoup misappropriated funds from Gerald's *individual interest* in the Partnership, not that Gerald was protecting the Partnership from the Beneficiaries' claims.

¶28    According to the record before the District Court, Gerald first purported to act on CRP's behalf when he signed the Confidential Settlement Agreement and the Stipulation as CRP's general partner in August 2020. The Confidential Settlement Agreement contains the only reference to a relationship between the Partnership and the Estate; it states that other debtors and "the Cook-Reynolds Partnership all benefited from [Karin] Cook's misappropriation of Estate funds." Linda testified that this statement was false because the Partnership would not have known or gained from Karin's misappropriation. The Estate provides no other basis for inferring that Gerald was protecting the Partnership by confessing to judgment on its behalf. Unlike the transfer of agricultural leases in *Baltrusch*

15

and like the partner's personal charges for gasoline in *Rodgers*, Gerald was not acting within the ordinary course of the Partnership's business when engaging in the Idaho probate proceedings. Accordingly, Gerald's authority to bind the Partnership is governed by § 35-10-301(2), MCA.

¶29 A partner acting outside of the ordinary course of the partnership business can only bind the partnership if authorized by the other partners. Section 35-10-301(2), MCA. Authorization can occur through prior permission or subsequent ratification. *Schrammeck*, 258 Mont. at 399-400, 853 P.2d at 707. The record does not show that Linda authorized Gerald to act on CRP's behalf in the Idaho probate proceedings. Linda attested that she did not provide permission to Gerald to execute the Confidential Settlement Agreement or the Stipulation on the Partnership's behalf. Linda testified that Gerald never talked to her about confessing to a judgment against the Partnership and that she had not seen the Confidential Settlement Agreement before the Estate's application for a writ of execution. The Estate points to the March 2020 emails to show that Linda "silently relied" on Gerald to defend the Partnership in the Idaho probate proceedings, which "explicitly authorized" Gerald to appear in the case and take binding legal positions on the Partnership's behalf. Attempting to reconcile the inherent contradiction between silence and explicit authorization, the Estate appears to argue that Linda implicitly or explicitly ratified Gerald's unauthorized conduct on behalf of the Partnership.[6]

---

[6] Having devoted most of its argument to showing that Gerald acted within the ordinary course of the Partnership's business and applying § 35-10-301(1), MCA, the Estate does not directly engage with the Partnership's § 35-10-301(2), MCA, analysis. However, the Estate's discussion of common law ratification speaks to the authorization condition in § 35-10-301(2), MCA.

16

¶30 A principal with "knowledge of the material facts may ratify a prior unauthorized act or transaction by express declaration or implicitly by acts, statements, or conduct which reasonably manifests an intent to affirm or be bound by the act." *Associated Mgmt. Servs., Inc.*, ¶ 40. A principal ratifies an unauthorized act by "knowingly accepting or retaining the benefit of the act." *Associated Mgmt. Servs., Inc.*, ¶ 40 (quoting § 28-10-211, MCA). As "mere acquiescence is not necessarily conclusive of ratification," *Associated Mgmt. Servs., Inc.*, ¶ 41, the party asserting ratification must prove (1) the principal accepted the benefits of the agent's act, (2) with full knowledge of the facts, and (3) circumstances or an affirmative election indicating an intention to adopt the unauthorized arrangement. *Scott D. Erler, D.D.S. Profit Sharing Plan v. Creative Fin. & Invs., L.L.C.*, 2009 MT 36, ¶ 27, 349 Mont. 207, 203 P.3d 744 (quoting *Safeco Ins. Co. v. Lovely Agency*, 200 Mont. 447, 453, 652 P.2d 1160, 1163 (1982)).

¶31 Linda never had full knowledge of the facts related to Gerald's purported appearance in the Idaho probate proceedings, consent to personal jurisdiction, or confession of liability on CRP's behalf. The March 2020 emails to Linda did not suggest that Gerald purported to act on the Partnership's behalf before the Idaho Court or to consent to personal jurisdiction over the Partnership. Even if the March 2020 emails included Gerald's 2008 and 2014 promissory notes, they did not purport to bind the Partnership and would not suggest to Linda that Gerald might be acting on the Partnership's behalf in the Idaho probate proceedings. Without full knowledge of these facts, Linda's March 2020 email correspondence with Beneficiaries' counsel could not ratify Gerald's prior unauthorized appearance in the proceedings as acting on the Partnership's behalf.

17

¶32 The Estate is incorrect that Linda's March 2020 email correspondence could prospectively ratify Gerald's attempt to bind the Partnership by the Confidential Settlement Agreement and the Stipulation in August 2020. By definition, ratification is the "affirmative confirmation of a *prior* act." *Associated Mgmt. Servs., Inc.*, ¶ 40 (emphasis added). The Estate presents no evidence that Linda knew that Gerald would subsequently purport to act on CRP's behalf to settle the Beneficiaries' claims or sign the Stipulation, which consented to the Idaho Court's jurisdiction.

¶33 Linda did not gain full knowledge of the Confidential Settlement Agreement's or the Stipulation's contents until over four years after Gerald executed them. Linda testified that she had not seen the Confidential Settlement Agreement, including Gerald's confession of CRP's contract and tort liability, before the Estate attempted to execute the Idaho Judgment in December 2024. The Estate presents no evidence that Linda previously received copies of the Confidential Settlement Agreement or the Stipulation. Even the entry of the Idaho Judgment and service by mail did not inform Linda that Gerald had purported to consent to personal jurisdiction and admit to liability on the Partnership's behalf. The Idaho Judgment identified CRP as a culpable party against whom the Estate and its beneficiaries could recover, but it did not indicate that Gerald had purported to voluntarily appear on the Partnership's behalf and to consent to personal jurisdiction. Linda also testified that she had no knowledge of the Idaho Judgment or its contents, since she let her mail accumulate without opening it during 2020.

¶34 Linda did not expressly or impliedly ratify Gerald's unauthorized appearance in the Idaho probate proceedings, stipulation to the Idaho Court's personal jurisdiction over the

18

Partnership, or waiver of personal jurisdiction objections. Linda did not ratify Gerald's unauthorized confession to the Partnership's contract and tort liability. Accordingly, Gerald was not authorized to appear for or bind the Partnership during the Idaho probate proceedings.

¶35 The Partnership has demonstrated that the Idaho long-arm statute was not satisfied as CRP has never engaged in business in Idaho, did not conduct business transactions with the Estate, and did not act tortiously against the Estate. *See* Idaho Code § 5-514(a), (b) (2020) (applying Idaho jurisdiction if person or their agent transacts business or commits tortious act within Idaho). Because Linda did not ratify Gerald's unauthorized appearance on the Partnership's behalf, the Partnership did not voluntarily appear in the Idaho probate proceedings or waive its objections to the Idaho Court's lack of personal jurisdiction. *See Telford*, 314 P.3d at 182-83 (recognizing that voluntary general appearance waives objection to lack of personal jurisdiction). The Idaho Judgment against the Partnership is void for lack of jurisdiction, warranting Rule 60(b)(4) relief.

¶36 Finally, the Estate argues that the Partnership's Rule 60(b)(4) motion was untimely because it occurred four years after the entry of the Idaho Judgment. The Partnership acknowledges that the time between the entry of judgment and moving for relief was "appreciable" but argues that the circumstances justified the delay.

¶37 Rule 60(c)(1) requires a motion for relief under Rule 60(b)(4), (5), or (6), to be made "within a reasonable time," but it does not specify a definite time limit. *Koch*, 253 Mont. at 269, 833 P.2d at 186. What counts as a reasonable time depends on the particular facts

19

of each case and is within the court's sound discretion.[7]  *In re Marriage of Waters*, 223 Mont. 183, 189, 724 P.2d 726, 730 (1986).  Relevant considerations include prejudice to the party opposing the motion and the basis for the movant's delay.  *Waters*, 223 Mont. at 189, 724 P.2d at 730; *United States v. Holtzman*, 762 F.2d 720, 725 (9th Cir. 1985) (analyzing timeliness of analogous Fed. R. Civ. P. 60(b)(5) and (6) motions by considering whether opposing party was prejudiced and movant had good reason for delayed action).

¶38     In *Waters*, we held that a Rule 60(b)(6) motion was made within a reasonable time because the opposing party was not prejudiced by the two-year delay between Congress's enactment of new grounds for relief and the movant's use of them.  *Waters*, 223 Mont. at 189, 724 P.2d at 730-31.  Twenty-seven months after Congress allowed state courts to equitably divide military retirement pay upon divorce, Doris Waters sought to amend her dissolution decree to include her ex-husband's military pension as a marital asset.  *Waters*, 223 Mont. at 185, 724 P.2d at 728.  Because the district court substituted Doris's new right to share her ex-husband's pension payments for his existing spousal maintenance obligation, we "perceive[d] no prejudice" to the ex-husband by Doris's delayed Rule 60(b)(6) motion.  *Waters*, 223 Mont. at 189, 724 P.2d at 730-31.  In *Holtzman*, a five-year delay before filing Fed. R. Civ. P. 60(b)(5) and (6) motions was reasonable because the movant provided adequate reasons for not appealing the original judgment and the delay

---

[7] The Estate asserts that because the District Court acted within its discretion to find the Rule 60(b)(4) motion untimely, this Court must affirm the District Court.  This is a puzzling assertion, because the District Court made no such finding.  The Partnership's Rule 60(b)(4) motion was deemed denied by operation of rule.  The parties provided multiple grounds upon which the District Court could have denied the Rule 60(b)(4) motion, and timeliness was not necessarily the dispositive issue.

did not prejudice the opposing party. *Holtzman*, 762 F.2d at 725. Four years after a permanent injunction restrained the movant from importing motor vehicles in violation of the Clean Air Act, he learned that the Government interpreted the injunction more broadly than the importer had understood. *Holtzman*, 762 F.2d at 723. The importer's reasonable interpretation of the injunction informed his decision to not appeal the original judgment, and his failure to appeal did not prejudice the Government. *Holtzman*, 762 F.2d at 725. In contrast, we held that a five-month delay in moving for Rule 60(b)(6) relief from a default judgment was unreasonable when the movants clearly knew about the judgment within two weeks of its entry and could have moved for relief under Rule 60(b)(1) within the then-applicable 60-day deadline. *Bahm v. Southworth*, 2000 MT 244, ¶ 16, 301 Mont. 434, 10 P.3d 99.

¶39 The Partnership moved for Rule 60(b)(4) relief within a reasonable time under the particular facts of this case. As in *Waters* and *Holtzman*, we perceive no prejudice to the Estate as a result of the four-year delay between the entry of judgment against the Partnership and its motion for relief. Even if the Partnership knew of the Idaho Judgment, the Estate does not explain how it was harmed by the delay or how it detrimentally relied upon the Idaho Judgment. The Estate presents no evidence that it attempted to enforce the Idaho Judgment against the Partnership until the Estate applied for a writ of execution in the District Court in December 2024, over four years after the entry of judgment, after which Linda immediately sought to vacate the judgment.

¶40 Like the vehicle importer in *Holtzman* and unlike the movants in *Bahm*, the Partnership provides a reasonable basis for the four-year delay. Linda testified that she

21

was not aware of the Idaho Judgment until the Estate attempted to execute it in December 2024. Linda admitted that her correct address was listed on the Idaho Judgment's Certificate of Service, but she reasonably explained that she let her mail accumulate without opening it during 2020 while focusing on supporting her daughter's cancer treatment and recovery. Once Linda learned of the Idaho Judgment in December 2024, when the Estate finally sought to execute it, she took immediate action by hiring an attorney, opposing the writ of execution, and asking the District Court to vacate the judgment.

¶41 The Estate argues that Linda's failure to diligently monitor her mail in 2020 makes the four-year delay inexcusable. But Linda had no reason to expect mail related to the Idaho probate proceedings or an order entering judgment against the Partnership, unlike the untimely movants in the Estate's cited authority. *See In re Wilson*, 349 B.R. 831, 833, 835-36 (Bankr. D. Idaho 2006) (finding that in debtor-initiated bankruptcy proceedings, debtor's failure to monitor mail at address he provided in bankruptcy petition did not satisfy "good cause" standard required for Fed. R. Civ. P. 60(b)(1) relief or any elements for Fed. R. Civ. P. 60(b)(6) relief); *Fischer v. Barnett Bank of S. Fla.*, 511 So.2d 1087, 1087-88 (Fla. Dist. Ct. App. 1987) (holding that failure to respond to properly served petition was inexcusable neglect because defendants were fully aware of the pending controversy, were represented by counsel during pre-litigation negotiations, and left on two-month European trip without establishing mail monitoring). The March 2020 emails from Beneficiaries' counsel notified Linda that Gerald's actions might affect the Partnership's property and that the Partnership was restrained from disposing of or encumbering its property until

22

Karin posted a bond. They did not indicate that the Estate would seek judgment against the Partnership itself. Nor did they suggest that Gerald purported to act on CRP's behalf by appearing in the proceedings, consenting to the Idaho Court's personal jurisdiction, or admitting to tort and contract liability. Rather, the March 2020 emails informed Linda of the proceedings as a "courtesy," and she testified that she was never served a summons or complaint relating to them. Having never before received mail regarding the Idaho probate proceedings, Linda had no duty to examine each piece of mail sent to her home while she focused on caring for her daughter.

¶42　Finally, the Estate argues that because Gerald knew of and consented to the entry of judgment on CRP's behalf, Linda's lack of personal knowledge of the Idaho Judgment is irrelevant to the timeliness of the Partnership's Rule 60(b)(4) motion. The Estate does not distinguish this position from its unsuccessful argument that Gerald could consent to jurisdiction on the Partnership's behalf, and it cites no legal authority requiring a different outcome. We are "not obligated to develop arguments on behalf of parties to an appeal, nor are we to guess a party's precise position, or develop legal analysis that may lend support to his position." *Est. of Harris v. Reilly*, 2025 MT 126, ¶ 16, 422 Mont. 383, 570 P.3d 552. Gerald's personal knowledge of the Idaho Judgment does not affect the timeliness of the Partnership's motion.

¶43　The Partnership has demonstrated a reasonable basis for not learning of the Idaho Judgment until December 2024, and the Estate has shown no prejudice from the four-year delay. Under these circumstances, the Partnership moved for Rule 60(b)(4) relief within a reasonable time.

23

## CONCLUSION

¶44 The District Court erred by denying the Partnership's motion for Rule 60(b)(4) relief. The domesticated Idaho Judgment against the Cook-Reynolds Partnership is void for the Idaho Court's lack of personal jurisdiction, and the Partnership made its Rule 60(b)(4) motion within a reasonable time. We reverse the District Court's deemed denial of the Partnership's Rule 60(b)(4) motion and vacate that portion of the domesticated Idaho Judgment holding the Cook-Reynolds Partnership liable to the Estate and its remaining beneficiaries for the total judgment and interest. Our decision does not affect the Idaho Judgment as it pertains to other judgment debtors.

/S/ JAMES JEREMIAH SHEA

We Concur:

/S/ CORY J. SWANSON
/S/ KATHERINE M. BIDEGARAY
/S/ INGRID GUSTAFSON
/S/ JIM RICE